**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CITY OF METROPOLIS, ILLINOIS, a Municipal Corporation, and COUNTY OF MASSAC, a Municipal Corporation,<br><br>*Plaintiffs,*<br><br>v.<br><br>HONEYWELL INTERNATIONAL, INC. a Delaware corporation, individually and as successor-in-interest to Allied-Signal, Inc.<br><br>*Defendant.* | Case No.: 3:21-cv-00860-SMY<br><br>Honorable Staci M. Yandle |
| ROGER STEWARD, CLYDE SCHMIDT, JOAN SCHMIDT, TIM BECK, CHARLA BECK, RANDY LANGFORD, BRENDA LANGFORD, TODD FAULKNER, KIM FAULKNER, Illinois residents, on behalf of themselves individually and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>HONEYWELL INTERNATIONAL, INC. a a Delaware corporation, individually and as successor-in-interest to Allied-Signal, Inc.<br><br>*Defendant.* | Case No.: 3:18-cv-01124-SMY<br><br>Honorable Staci M. Yandle |
| SHANNON DASSING, Individually and as Executrix of STEPHEN KRUEGER, Decedent,<br><br>*Plaintiff,*<br><br>v.<br><br>HONEYWELL INTERNATIONAL, INC. a a Delaware corporation, individually and as successor-in-interest to Allied-Signal, Inc.,<br><br>*Defendant.* | Master Case No. 3:21-cv-00485-SMY<br><br>(Consolidated with Case Nos. 3:22-cv-1661, 3:22-cv-02112, 3:22-cv-02114, 3:22-cv-02344, & 3:23-cv-00002)<br><br>Honorable Staci M. Yandle |

## DEFENDANT'S MOTION FOR LEAVE TO REDACT OR FILE EXPORT CONTROLLED INFORMATION UNDER SEAL

Defendant Honeywell International Inc. ("Honeywell") respectfully files this motion for leave to redact or file under seal certain documents that will be used as exhibits to summary judgment and Rule 702 motions and that contain Export Control Restricted information, as identified below.[1] In support thereof, Honeywell states as follows:

### INTRODUCTION

As Honeywell previously stated in a Consent Motion for Entry of Parties' Agreed Confidentiality Order in this series of cases, *see Dassing v. Honeywell International, Inc.*, 3:21-cv-00485-SMY, ECF No. 35 (filed April 8, 2022), many of the documents produced under the Confidentiality Orders in these cases are especially sensitive because they implicate national security interests relating to uranium hexafluoride processing. Honeywell contends that those interests—and the federal regulations surrounding them—justify redacting or sealing certain documents containing export controlled information at the dispositive-motion stage of this series of cases.

### U.S. FEDERAL EXPORT CONTROLS

The United States governs exports of information, technology, and goods out of the country through a series of laws and regulations aimed at guarding our nation from its enemies. These laws prevent and punish the inadvertent or purposeful export outside the United States, or sharing with non-U.S. persons wherever located including through unauthorized public release, of information, technology, and goods that are critical to national security and energy independence. *E.g.*, Department of Energy ("DOE") regulations at 10 C.F.R. Part 810 ("DOE Part 810") ("Assistance

---

[1] Honeywell has simultaneously filed identical motions in *Steward v. Honeywell International, Inc.*, No. 3:18-cv-01124-SMY; *City of Metropolis, Illinois & County of Massac v. Honeywell International, Inc.*, No. 3:21-cv-00860-SMY; and *Dassing v. Honeywell International, Inc.*, No. 3:21-cv-00485-SMY.

2

to Foreign Atomic Energy Activities"), attached as Exhibit A; Nuclear Regulatory Commission Controls at 10 C.F.R. Part 110 ("NRC Part 110") ("Export and Import of Nuclear Equipment and Material"). These protective laws are known as "export controls." Export controls apply to the Honeywell Metropolis Works facility ("MTW") because of its unique work in the U.S. nuclear energy and weapons cycle, work that is crucial to national security and energy independence.

Only the federal government can determine if documents or information are export controlled and can decide to release materials that may be export controlled. *See* Ex. A, DOE Part 10 at §§ 810.5, 810.8–11; NRC Part 110 at §§ 110.2 ("Obligations"), 110.4. Each individual and entity with access to export controlled information has a duty under U.S. federal law to protect the materials and may be sanctioned if any export controlled materials are not released in accordance with applicable laws. *See* Ex. A, DOE Part 10 at § 810.15; NRC Part 110 at § 110.42, 110.60–67. Simple publication of export controlled material does not remove the protections; only official publication by an agency or branch of the federal government that itself has the power to de-designate the material as export controlled can be relied on to consider the material now "released" and no longer protected. *See* Ex. A, DOE Part 10 at §§ 810.9–11; NRC Part 110 at §§ 110.31–32, 110.40–41.

## **HONEYWELL MTW'S CONVERSION PROCESS IS EXPORT CONTROLLED**

Honeywell MTW converts uranium 3O8 ("yellow cake") into uranium hexafluoride ("UF6"). The UF6 then is sold to third parties for enrichment and use in nuclear energy or nuclear weapons. Honeywell MTW is the only UF6 conversion facility in the United States, and the conversion process Honeywell MTW uses is unique. There is no other facility like MTW in the country or in the world. Honeywell MTW's information and technology, including its operational "know how" are thus critical to the United States and are heavily protected by export control laws.

There is no dispute that Honeywell MTW's conversion process is export controlled under federal law; plaintiffs in all of the pending cases agree that federal export control laws apply.

Honeywell MTW is subject to Nuclear Regulatory Commission Controls at NRC Part 110 and, for nuclear-related exports not subject to NRC Part 110 controls, DOE Part 810. Honeywell MTW falls under these regulations because it is a uranium processing facility and holds an NRC license. The facility thus falls under both 10 C.F.R. §110.8(f) ("NRC Part 110") and 10 C.F.R. § 810.2(b)(1) ("DOE Part 810").

Two other regulatory regimes could also apply. The applicable sections of the Export Administration Regulations ("EAR"), 15 C.F.R. Part 730–774, administered by the Department of Commerce, control nuclear balance of plant, health and safety equipment, general infrastructure and materials and certain nuclear manufacturing equipment and technology dual-use items not otherwise captured under other export control regimes. Finally, the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. Part 120–130, controls defense articles, related services and brokering. The ITAR controls highly specialized information related to nuclear weapons and potentially could apply to some aspects of Honeywell MTW's operations not covered in these documents, but the nuclear regulatory regimes above are more likely to apply to the documents at issue here.

### HONEYWELL MTW'S PROTECTION OF MATERIAL THAT MAY BE SUBJECT TO EXPORT CONTROLS IN THIS LITIGATION

For these reasons and because of the critical importance of its work to the United States, it is Honeywell MTW's policy, practice, and procedure to treat all material technical information and documents at the facility as if they are export controlled. In accordance with that law, Honeywell produced 289,812 documents (1,988,051 pages) that are designated "May Be Subject to Export Controls" under the parties' agreed Confidentiality Order. Before publishing materials,

such as by attaching those materials to a publicly filed motion, a careful process is followed to ensure compliance with export control laws.

In spite of this heavy burden, Honeywell has undertaken a reasonable and good-faith analysis of the materials that it cites as evidence for its dispositive motions, focusing on identifying and moving to redact or seal only the narrowest set of materials that may be export controlled. Specifically, Honeywell has identified export controlled material in the six documents attached (redacted or under seal) to this motion and detailed below. Honeywell is moving to redact whenever possible so that no information is being relied on that is not being disclosed to the public. Honeywell also is limiting its motion to seal to only one single document in which the material that is likely to be export controlled is necessary to the motion and cannot be redacted. Thus, Honeywell is moving to seal as infrequently as possible in order to provide the Court and the public with the most fulsome information allowed by federal law that is related to the motions.

Plaintiffs agree that export controls apply to Honeywell MTW generally, but they disagree that the specific documents and information identified in this motion to redact or seal fall within the federal laws that protect material from export and require it to be redacted or sealed in this case. Plaintiffs disagree at their own risk. Each individual and entity with access to the information is charged by federal law to protect it and is subject to sanctions for failing to do so. There can be no agreement of the parties to release this information. As explained above, only the United States government can determine whether material is or is not export controlled and/or choose to release it even if it is export controlled. Honeywell is not legally capable of compromising on this issue; the only entity that could resolve this dispute is the United States federal government. Though that review can be requested, it is time-consuming and not guaranteed. The U.S. is not required to actually determine the export control nature of any specific document or set of data or to release

from controls for publication any specific document; materials that are or that remain even potentially subject to export control protections are required to be protected.

## LEGAL STANDARD

"Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, *unless a statute, rule, or privilege justifies confidentiality*." *Dassing v. Honeywell International, Inc.*, 3:21-cv-00485-SMY, ECF No. 130 (April 19, 2024) (emphasis added) (quoting *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010)). Further, documents "that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Id.* (quoting *Baxter Int'l., Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)). However, "[t]he Seventh Circuit has also emphasized 'that litigation be conducted in public to the maximum extent consistent with respecting trade secrets . . . and other facts that should be held in confidence.'" *Knox v. Asselmeier*, No. 3:19-CV-00382-SMY, 2023 WL 2648533, at *2 (S.D. Ill. Mar. 27, 2023) (quoting *Hicklin Eng'g, L.c. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006), abrogated on other grounds by *Americold Realty Trust v. Conagra Foods, Inc.*, 57 U.S. 378 (2016)) (citing *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999)).

## ARGUMENT

Heeding the Seventh Circuit's standards regarding sealing, as well as the Court's prior order on the subject—which noted that the parties' agreement to keep matters private, by itself, does not justify sealing, *see Dassing*, 3:21-cv-00485-SMY, ECF No. 130—Honeywell addresses below the national security interests and federal regulations that Honeywell believes justify sealing "Export Control Restricted" information at the dispositive-motion stage of this series of cases. Honeywell moves to seal the following documents because they contain information that is

potentially export controlled. Honeywell also moved to redact out of an abundance of caution, as it is not clear from the local rules whether redaction on the basis of export controls is allowed without leave of Court.

**1.      Internal Dosimetry Technical Basis Manual**

Honeywell moves to seal the "Internal Dosimetry Technical Basis Manual" attached as sealed Exhibit B (the "Dosimetry Manual"). The Dosimetry Manual is a Honeywell MTW document that instructs on the assessment of dose for occupational purposes. Honeywell has always kept this document confidential and treated it is as export controlled under federal law. The document was maintained by MTW with all other export controlled information on devices and by personnel who followed procedures to prevent publication of the document to external sources, including but not limited to those prohibited by federal law. The document was produced in this litigation designated both "CONFIDENTIAL" and "MAY BE SUBJECT TO EXPORT CONTROLS" under the Parties' Stipulated Amended Confidentiality and Export Control Order, *Steward*, No. 3:18-cv-01124-SMY, ECF No. 229. The document has not been published by the NRC or any other federal agency.

The Dosimetry Manual is export controlled under one or more of the export control regulations, and most likely under the DOE regulations for export in addition to the NRC regulations governing plant operations. It contains sensitive information about the composition of yellow cake material on site before and during the process to convert the yellow cake to UF6, as well as information about the methods applied in the conversion process to generate UF6. *See* Ex. A, Sections 4–6. As the only UF6 conversion facility in the United States and with a conversion process that is unique in the world, Honeywell MTW's process is critical to U.S. energy independence and national security and thus subject to stringent controls. Honeywell MTW, and its uranium conversion process, is governed by an NRC license. Technology to run the conversion

process falls under the NRC Part 110 controls, and most likely for export under the DOE Part 810 controls, and, if not, under the nuclear sections of the EAR. It is less likely to be controlled by the ITAR, but it is subject to restrictions on access by non-U.S. persons under the DOE and NRC regulations.

**2.     FERMCO Documents Containing Green Salt Composition Information**

Honeywell also moves to redact two FERMCO documents, "FERMCO Document Package" and "Letter re: FERMCO Plutonium", attached as redacted Exhibits C and D respectively. The two FERMCO documents contain information concerning the composition of the green salt that is used in and created by the UF6 conversion process. Honeywell has always kept this information confidential and treated it as export controlled, sharing it only with the federal government and authorized U.S. persons (as is evident in the documents attached as redacted Exhibits C and D). This information was maintained by MTW with all other export controlled information on devices and by personnel who followed procedures to prevent publication of the document to external sources, including but not limited to those prohibited by federal law. The information was produced in this litigation designated both "CONFIDENTIAL" and "MAY BE SUBJECT TO EXPORT CONTROLS" under the Parties' Stipulated Amended Confidentiality and Export Control Order, *Steward*, No. 3:18-cv-01124-SMY, ECF No. 229. To the best of Honeywell's knowledge, the information has not been published by the NRC or any other federal agency.

The green salt composition information is export controlled because it contains information about the composition of green salt used in and created by the UF6 conversion process. This information is most likely export controlled under the DOE Part 810 controls, and, if not, under the NRC Part 110 controls, or nuclear sections of the EAR. It is less likely to be subject to the ITAR. The technology is subject to restrictions on access by non-U.S. persons. The conversion

process is unique to Honeywell MTW. MTW is the only UF6 conversion facility in the United States and is crucial to national security and energy independence.

**3.      Expert Reports Containing Images Prepared From Conversion Process Samples**

Honeywell moves to redact two expert reports because they contain images of particles Plaintiffs collected at the Honeywell MTW facility during the conversion process (the "Images"). The two expert reports, the "Kaltofen Final Report" and the "Borch Revised Expert Report", are attached as Exhibits E and F respectively. The Images in the reports may be export controlled because they are microscopic images of particles that could show the exact morphology of material as it is being converted during Honeywell MTW's export controlled conversion process. Accordingly, Honeywell designated the Images both "CONFIDENTIAL" and "MAY BE SUBJECT TO EXPORT CONTROLS" under the Parties' Stipulated Amended Confidentiality and Export Control Order, *Steward*, No. 3:18-cv-01124-SMY, ECF No. 229.

The Images probably are export controlled under one or more of the export control regulations, most likely the DOE and/or NRC regulations, because they could be used to obtain sensitive information about the composition of materials during the conversion process. *See* Ex. D. As the only UF6 conversion facility in the United States and with a conversion process that is unique in the world, Honeywell MTW's process is critical to U.S. energy independence and national security and thus subject to stringent controls. Honeywell MTW, and its uranium conversion process, is governed by an NRC license. Technology to run the conversion process for purposes of export controls most likely is subject to the DOE Part 810 regulations, and, if not, under the NRC controls or nuclear sections of the EAR. The Images are less likely to be controlled by the ITAR. The Images are subject to restrictions on access by non-U.S. persons.

## CONCLUSION

For these reasons, Honeywell respectfully asks the Court to grant its Motion for Leave to

Redact or File Export Control Restricted Information Under Seal, so that Honeywell may redact

or file under seal the above-referenced documents when they are used as exhibits to motions.


Dated: May 10, 2024                         Respectfully submitted,


By   */s/ John E. Galvin*
_____

John E. Galvin
Suzanne P. Galvin
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101
Tel: 314.552.6341
JGalvin@thompsoncoburn.com
SGalvin@thompsoncoburn.com


Lauren C. Daniel (*Pro Hac Vice*)
Michael D. Daneker (*Pro Hac Vice*)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001
Tel: 202.942.5000
Lauren.Daniel@arnoldporter.com
Michael.Daneker@arnoldporter.com


*Attorneys for Defendant Honeywell*
*International Inc.*

10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was furnished via ECF to counsel of record, this 10th day of May, 2024.

/s/ *John E. Galvin*